**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 95-20566

(Summary Calendar)
_____

FIRST STATE INSURANCE COMPANY,

Plaintiff-Appellee,

versus

NORTH RIVER INS CO,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas
(93-CV-3497)
_____

December 14, 1995

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Defendant North River Insurance Company ("North River") appeals the district court's order granting Plaintiff First State Insurance Company's ("First State") motion for summary judgment. We affirm.

I

First State issued a $2,000,000 malpractice insurance policy to Smith, Fankhauser, Voigt & Watson ("Smith Fankhauser"), an

[*] Local Rule 47.5.1 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

accounting firm in McAllen, Texas.  First State's policy covered claims which were (1) based upon Smith Fankhauser's acts, errors, or omissions during the five-year period prior to March 22, 1985, and (2) filed during the three-year period after March 22, 1985. The First State policy contains the following "other insurance" condition:

> This Insurance does not cover any claim which is insured, or would, but for the existence of this insurance, be insured by any other existing policy or policies except in respect of any excess beyond the amount which would have been payable under such policy or policies had this insurance not been effected.

North River issued a separate $1,000,000 malpractice insurance policy to Smith Fankhauser.  North River's policy covered claims which were (1) based on Smith Fankhauser's acts, errors, or omissions after March 22, 1983, and (2) filed during the one-year period after March 22, 1986.  The North River policy contains the following "other insurance" provision:

> If there is other insurance applicable to a claim covered by this policy, this policy shall be deemed excess insurance over and above the applicable limits of all such insurance.

The North River policy also contains the following exclusion, which states that coverage does not apply

> to any claim arising out of any act, error or omission occurring prior to the effective date of this policy if there is other insurance applicable, or the Insured at the effective date knew or could have reasonably foreseen that such act, error or omission might be expected to be the basis of a claim or suit.

One of Smith Fankhauser's clients, a bank, was declared insolvent in May, 1986.  Minority shareholders filed suit against the bank's former officers and directors in November, 1986.  The

-2-

officers and directors then filed a third-party action against Smith Fankhauser, alleging malpractice liability arising from financial work performed by Smith Fankhauser. The Federal Deposit Insurance Corporation filed a separate lawsuit against Smith Fankhauser, alleging malpractice liability arising from an audit of the bank performed by Smith Fankhauser for the year ending December 31, 1984. Smith Fankhauser settled the FDIC lawsuit for $900,000.

First State paid the settlement amount in full, and then filed an action in district court to have the rights of First State and North River declared with regard to the two insurance policies. The district court granted First State's motion for summary judgment, awarded First State $300,000 plus interest in connection with the FDIC settlement, and ordered North River to pay one third of the litigation expenses in the third-party action. North River timely filed its notice of appeal.

## II

### A

North River argues that the district court improperly interpreted the language of the insurance policies. A district court's interpretation of an insurance policy presents a question of law, which we review *de novo*. *Old Republic Ins. Co. v. Comprehensive Health Care Assoc., Inc.*, 2 F.3d 105, 107 (5th Cir. 1993).

Under Texas law, when the terms of an insurance policy are

-3-

unambiguous, courts must give effect to their plain meaning.[1] *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). However, conflicts between the policy provisions of concurrent insurance policies are resolved by ignoring the conflicting provisions and prorating the liability "'between the two insurance companies in proportion to the amount of insurance provided by their respective policies.'" *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 590 (Tex. 1969) (quoting *United States Auto. Ass'n v. Hartford Accident & Indem. Co.*, 414 S.W.2d 836, 841 (Tenn. 1967)). Texas courts determine whether such a conflict exists according to the following rule:

> When, from the point of view of the insured, she has coverage from either one of two policies but for the other, and each contains a provision which is reasonably subject to a construction that it conflicts with a provision in the other concurrent insurance, there is a conflict in the provisions.

*Hardware Dealers*, 444 S.W.2d at 589.

We must first determine, from the point of view of the insured, whether Smith Fankhauser had coverage from either one of the two policies at issue "but for" the other policy. Both the third-party action and the FDIC suit were based on alleged acts, errors, or omissions of Smith Fankhauser during the five-year period prior to March 22, 1985, and both claims were made during the three-year period after March 22, 1985. Thus, Smith Fankhauser would be covered by the First State policy "but for" the operation

---

[1]    Both sides agree that Texas law applies to this diversity action. *See Ranger Ins. Co. v. Estate of Mijne*, 991 F.2d 240, 243 n.9 (5th Cir. 1993) (noting that Texas rules of insurance policy interpretation apply to diversity actions brought in district courts in Texas).

of the policy's "other insurance" provision and the existence of the North River policy. Likewise, since both the third-party action and the FDIC suit were based on alleged acts, errors, or omissions of Smith Fankhauser after March 22, 1983, and both claims were made during the one-year period after March 22, 1986, Smith Fankhauser would be covered by the North River policy "but for" the operation of the policy's "other insurance" provision and the existence of the First State policy.

Next, we must determine, from the point of view of Smith Fankhauser, whether each of the policies at issue contains a provision which is reasonably subject to an interpretation that conflicts with a provision in the other policy. According to the First State policy's "other insurance" provision, First State's coverage is limited to the excess of the policy limits of other applicable policies. According to the North River policy's "other insurance" provision, North River's coverage is limited to the excess of the policy limits of other applicable policies.

North River argues that these provisions do not conflict because of the operation of the exclusion provision in the North River policy. According to that provision, if there is another policy applicable to the claim, the North River policy excludes coverage of claims arising out of any act, error, or omission prior to the "effective date" of the North River policy. North River argues that the "effective date" of its policy is March 22, 1986. March 22, 1986 is designated in the North River policy as the first date in the "policy period." "Policy period" is defined in the

policy as the time elapsing between the "inception date" and the date of termination. Thus, though March 22, 1986, may be the "inception date" of the policy, there is no indication that it is also the "effective date." The term "effective date" is not defined by the policy. While one reasonable interpretation would make the "effective date" March 22, 1986 (the date after which all claims covered by the policy must have been filed), another reasonable interpretation would make the "effective date" March 22, 1983 (the date after which all acts, errors, or omissions covered by the policy must have occurred). According to *Hardware Dealers*, an insurer does not escape liability just because its interpretation is reasonable; a conflict between policies exists whenever an interpretation that the provisions at issue conflict is not unreasonable.[2] *Hardware Dealers*, 444 S.W.2d at 589. Since none of the acts, errors, or omissions alleged in either the third-party action or the FDIC lawsuit occurred prior to March 22, 1983, the exclusion provision in the North River policy may be reasonably interpreted so as not to apply to the claims at issue in this case.

The "other insurance" provision in the First State policy and the "other insurance" provision in the North River policy stand in direct conflict with each other. Therefore, in accordance with

---

[2]    This result is consistent with Texas law on the interpretation of insurance policies generally. When a term in an insurance policy may be reasonably interpreted in more than one way, it is ambiguous. *Entzminger v. Provident Life & Accident Ins. Co.*, 652 S.W.2d 533, 535 (Tex. App.)) Houston [1st Dist.] 1983, no writ). Ambiguous terms should be interpreted strictly against the insurer, so as to provide maximum coverage to the insured. *Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993); *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991).

Texas law, the conflicting provisions must be ignored, and liability must be prorated in proportion to the amount of insurance provided by the respective policies.  *Hardware Dealers*, 444 S.W.2d at 590.  Since the aggregate limit on the First State policy is $2,000,000, and the aggregate limit on the North River policy is $1,000,000, the district court correctly allocated two-thirds liability to First State and one-third liability to North River.

B

North River also argues that the district court erred in granting summary judgment without first joining Smith Fankhauser as a necessary party.[3]  A person should be joined as a necessary party in an action if "in the person's absence complete relief cannot be accorded among those already parties."  FED. R. CIV. P. 19(a)(1). First State paid the $900,000 settlement amount in the FDIC lawsuit and has incurred litigation expenses in the third-party action. Under Texas law, First State is both contractually and equitably subrogated to the rights of Smith Fankhauser against North River. *See Southwestern Indemnity Co. v. National Surety Corp.*, 277 F.2d 545, 549 (5th Cir. 1960) (holding that insurance company was contractually subrogated to the rights of insured in seeking contribution from other insurer for settlement amount paid by insurance company); *Liberty Mut. Ins. Co. v. General Ins. Corp.*, 517 S.W.2d 791, 797 (Tex. Civ. App.))Tyler 1974, writ ref'd n.r.e.)

---

[3]     We review a district court's decision relating to the joinder of necessary parties for abuse of discretion.  *See Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885, 889 (5th Cir. 1968) (reviewing district court's decision to dismiss for failure to join a necessary party for abuse of discretion).

(holding that insurance company was equitably subrogated to the rights of insured in seeking contribution from other insurer for settlement amount if contractual language was insufficient to support contractual subrogation).  Thus, since complete relief can be accorded between First State and North River, Smith Fankhauser is not a necessary party.[4]  Accordingly, the district court did not abuse its discretion by granting summary judgment without joining Smith Fankhauser.

III

For the foregoing reasons, we AFFIRM the district court's order granting First State's motion for summary judgment.

---

[4]    A person may also be a necessary party if "the person claims an interest relating to the subject of the action" and meets certain other criteria. FED. R. CIV. P. 19(a)(2).  However, the record contains no evidence that Smith Fankhauser has claimed an interest relating to the subject of this lawsuit.